**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| US CARGO DIRECT, INC., an Illinois corporation, | ) ) ) | Case No. 22-cv-3925 |
| Plaintiff, | ) ) | |
| vs. | ) ) | Hon. |
| PNC BANK NA, a Pennsylvania corporation, | ) ) ) | Hon. Magistrate |
| Defendant. | ) ) | |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

US Cargo Direct, Inc., by and through its undersigned counsel, for its Complaint against

PNC Bank, National Association ("PNC Bank NA"), alleges as follows:

**THE PARTIES**

1.     Plaintiff US Cargo Direct, Inc. (hereinafter referred to as "Plaintiff" or US Cargo")

is an Illinois corporation organized and existing under the laws of the State of Illinois.  US Cargo,

which is primarily engaged in the business of transportation services including trucking and

logistics, has a principal place of business of 13769 Main Street, Lemont, Illinois 60439.

2.     Defendant PNC Bank NA, a subsidiary of The PNC Financial Services Group, Inc.,

is a foreign non-qualified association, organized and existing under the laws of the state of

Pennsylvania.  PNC Bank NA has a principal place of business of 300 Fifth Avenue, Pittsburgh,

Pennsylvania 15238.  PNC Bank NA will hereinafter be referred to as "Defendant" or "PNC."

3.     PNC is primarily engaged in business as a banking and lending facility.  At all times

relevant herein, PNC conducts and is engaged in business in the State of Illinois.  PNC issued a

renewal line of credit to US Cargo from its Downers Grove, Illinois, office, which performs an

essential function directly relating to Plaintiff's claims, as described in more detail, *infra*.

**NATURE OF THE ACTION**

4.      In March of 2020, PNC solicited US Cargo to apply for and participate in a PNC sponsored loan (the "Loan")  under the Paycheck Protection Program ("PPP").  In the loan documents it presented to US Cargo for consideration and/or execution, PNC required that US Cargo certify its understanding that  "**the Bank** will confirm the eligible PPP Loan amount using the Borrower's tax information that it has submitted."  (Emphasis added).

5.      As part of its pitch to US Cargo to take the Loan, knowing that it would receive financial gain if US Cargo took the Loan, PNC represented that payments US Cargo made to its independent contractor truck drivers would qualify as being made for a "Permitted Loan Purpose" and would be eligible for complete forgiveness.  But in fact, PNC knew at the time it funded US Cargo's loan that virtually none of the Loan proceeds would be eligible for forgiveness.

6.      On July 28, 2021, PNC advised US Cargo that only $53,017 of its $1,524,000 Loan would be "eligible for forgiveness," and demanded that US Cargo repay the balance of $1,470,983.

7.      US Cargo brings this civil action against PNC for breach of contract (Count I), unjust enrichment (Count II), breach of fiduciary duty (Count III), negligent misrepresentation (Count IV), and promissory estoppel (Count V).

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

9.      Personal jurisdiction exists over PNC because, among other things, it has established offices in this District and purposely availed itself of the laws of this jurisdiction by

soliciting business from and contracting with individuals and other business entities in this jurisdiction.

10.     PNC initially made contact with Plaintiff to inquire about Plaintiff taking out a loan that is the subject of this lawsuit. After this initial discussion, negotiations between the Parties continued partially in this District.

11.     A substantial portion of acts to be performed subject to the terms of the loan agreement that is the subject of this lawsuit took place in this District.

12.     Venue in the District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391, because a substantial number of the acts or omissions upon which Plaintiff's claims are premised occurred in this District.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

13.     PNC is a Small Business Administration ("SBA") lender as established and regulated by 15 U.S.C.A. §633 *et. seq.* and Title 13 of the Code of Federal Regulations.

14.     The COVID-19 pandemic resulted in the passage of the CARES Act, which included the PPP, an SBA-backed loan that was to allow businesses to keep their workforces employed during the pandemic.

15.     Section 1102 of the CARES Act temporarily added a new product, the PPP, to the SBA's §7(a) loan program.

16.     The PPP provided cash-flow assistance through 100% federally guaranteed loans to employers who maintained their payroll during the pandemic. Under the PPP, PPP loans were to be 100% forgiven if used for qualified expenses such as "payroll."

17.     PNC received, processed and approved applications from companies seeking PPP Loans.

18.     PNC funded PPP Loans, including a Loan that US Cargo applied for based on PNC's solicitation and in accordance with PNC's instructions, and which PNC approved.

19.     Section 1106 of the CARES Act set forth the requirements for loan forgiveness and states that "an eligible recipient shall be eligible for forgiveness of indebtedness on a covered loan in an amount equal to the sum of the following costs incurred and payments made during the covered period," and the enumerated list includes "payroll costs."

20.     Under the CARES Act, amounts forgiven under this section "shall be considered cancelled indebtedness by a lender."

21.     Interim Final Rule RIN 3245-AH34 states that "the borrower will not be responsible for any loan payment if the borrower uses all of the loan proceeds for forgivable purposes described below."

22.     As an SBA lender, PNC was required to be aware of the uses of PPP Loan proceeds that the SBA considered to be "forgivable purposes" or "Permitted Uses" for purposes of loan forgiveness.  This included awareness of Interim Rules and Guidance promulgated by the SBA from time to time after the passage of the CARES Act.

23.     In addition, PNC required US Cargo to use PNC's portal to submit the Loan application, such that US Cargo could not apply directly to the SBA.

24.     On April 6, 2020, the very day US Cargo applied for its PPP loan through PNC, the SBA published an Interim Final Rule implementing the new PPP provisions of the CARES Act. That interim final rule provided, among other things, that payments PPP Loan recipients might make to independent contractors would not count as payments to employees, and thus would not be eligible for loan forgiveness.  Exhibit A, "Interim Rule."

4

25.     As of April 12, 2020, PNC required prospective PPP borrowers (like US Cargo) to certify its understanding that:

> "*the Bank will confirm the eligible PPP Loan amount using the Borrower's tax information that it has submitted…*"  PNC's Paycheck Protection Program Certification, dated April 12, 2020.

(Exhibit B, "Certification")

26.     As of April 12, 2020, PNC required prospective PPP borrowers (like US Cargo) to certify that it "had employees for whom it paid salaries and payroll taxes *or paid independent contractors, as reported on Form 1099-MISC.*" (Ex. B, para. 3)

27.     As of April 12, 2020, after requiring prospective PPP borrowers (like US Cargo) to certify that it paid employees *or independent contractors* as part of its payroll costs, PNC required those prospective PPP borrowers to further certify that "the proceeds of the PPP Loan will (a) solely be used to *retain workers and maintain payroll* or make mortgage payments, lease payments and utility payments (the "Permitted Loan Purpose"), and (b) be allocated as set forth in the Borrower's application for the PPP Loan." *Id.*

28.     As of April 12, 2020, after requiring prospective PPP borrowers (like US Cargo) to certify that it paid employees *or independent contractors* as part of its payroll costs, PNC required those prospective PPP borrowers to further certify that "the Borrower understands and agrees that loan forgiveness may be provided if the Borrower uses all of the loan proceeds for the Permitted Loan Purpose." *Id.*, at para. 5.

29.     US Cargo owns and operates a trucking and logistics company which qualified for PPP loans.

30.     PNC and US Cargo established a banking relationship in October of 2018.  PNC opened a bank account and a line of credit for US Cargo at or near that time.

31.     In fact, PNC requested audit statements and employee/independent contractor payment records during its early relationship with US Cargo and continuing through the PPP application, such that PNC was familiar with the classification of US Cargo's workforce prior to 2020.

32.     As of March of 2020, PNC was well aware that the vast majority of the workforce performing work on US Cargo's behalf was made up of truck drivers who were independent contractors.

33.     In March of 2020, PNC approached US Cargo and suggested that US Cargo apply for a PPP Loan.

34.     Upon information and belief, PNC derived financial benefit by accepting and funding PPP Loans, including but not limited to US Cargo's Loan.

35.     In soliciting a PPP Loan from US Cargo, PNC representatives specifically indicated to US Cargo that Loan proceeds used to pay truck drivers who worked for US Cargo as independent contractors would be "eligible for forgiveness" (*i.e.*, such payments would qualify as a "Permitted Loan Purpose").

36.     PNC provided documents to prospective PPP borrowers (including US Cargo) setting forth the rules associated with applying for PPP loans that were eligible for forgiveness.

37.     For example, PNC provided US Cargo with a "Payment (sic) Protection Program Information Sheet – Borrowers." (Exhibit C, "Info Sheet") This form, created by PNC and bearing a date of April 3, 2020, laid out the basic terms of a PPP loan for which US Cargo could apply.

38.     PNC's Info Sheet informed US Cargo that "(l)oan forgiveness will be provided for the sum of documented payroll costs, (etc.)…You acknowledge that ***the lender will calculate the eligible loan amount using the tax documents you submitted.***"

39.     PNC specifically required US Cargo to include, as part of its submission of "tax documents" in support of its PPP Loan application, 1099-MISC forms US Cargo had submitted to the Internal Revenue Service in prior years to show US Cargo's past history of payments to independent contractor truck drivers.  *See* Exhibits C, D, E.

40.     PNC also provided US Cargo with a "Payment (sic) Protection Program SBA Loan Application Required Document Check List."  (Exhibit D, "Checklist")  By way of the Checklist, PNC advised US Cargo that "we believe that the following information may be required (to apply for a PPP loan):…***1099s for independent contractors for 2019.***"

41.     PNC also provided US Cargo with a Paycheck Protection Program Borrower Application Form, which US Cargo's Alex Gjurcinov initialed and executed on April 6, 2020. (Exhibit E, "Application")

42.     In the first "Certification" on page 2 of the Application, PNC required US Cargo to attest, and US Cargo did attest, that it "had employees for whom it paid salaries and payroll taxes ***or paid independent contractors, as reported on Form(s) 1099-MISC***" and that PPP funds received by US Cargo would be "used to retain workers and maintain payroll."

43.     PNC also provided US Cargo with a Payment (sic) Protection Program Term Note, dated April 12, 2020 by PNC and initialed and executed by US Cargo's Alex Gjurcinov on April 13, 2020.  (Exhibit F, "Term Note")

44.     The Term Note, created by PNC, outlined the process for application for loan forgiveness and required US Cargo to certify that it "had employees for whom it paid salaries and payroll taxes ***or paid independent contractors, as reported on Form 1099-MISC.***"  (Ex. F, para. 7)

45.     On April 12, 2020, PNC also provided US Cargo with a Paycheck Protection Program Certification form (Ex. B), as described above, wherein PNC required US Cargo to certify that it "had employees for whom it paid salaries and payroll taxes *or paid independent contractors, as reported on Form 1099-MISC.*" (Ex. B, para. 3)

46.     The Certification was initialed and executed by US Cargo's Alex Gjurcinov on April 13, 2020, one full week after the SBA had issued its guidance indicating that Loan proceeds paid to independent contractors would not be eligible for forgiveness.

47.     Finally, on April 14, 2020, Mr. Gjurcinov signed an agreement on behalf of US Cargo to accept PPP Loan proceeds from PNC in the amount of $1,524,200, an amount which PNC suggested and presented to US Cargo as an approvable and forgivable amount, based on PNC's review of US Cargo's records.

48.     PNC approved, processed and funded US Cargo's PPP Loan the following day, April 15, 2020, within 24 hours of US Cargo having submitted its application.

49.     As a bank working directly with the SBA to administer PPP loans to small businesses, PNC knew that the primary purpose of the PPP was to help small businesses survive the pandemic by providing funds, by way of forgivable loans, through which those businesses could continue to pay their workforces.

50.     At the time US Cargo applied for its PPP Loan, based on the representations PNC made as well as other content in documents that PNC had provided it (including the Application form for the Loan itself), US Cargo reasonably expected that amounts US Cargo paid to independent contractors from Loan proceeds would ultimately be forgiven.

51.     PNC's loan documents made clear that PNC reserved for itself the task of reviewing the documents submitted with US Cargo's loan application to determine the amount of loan proceeds that would eligible for forgiveness.

52.     More than one week prior to PNC having processed and funded US Cargo's loan, the SBA issued written guidance that payments made by companies taking PPP Loans to independent contractors would not qualify as eligible for forgiveness.

53.     Despite the fact that all of PNC's loan documents indicated that the entirety of US Cargo's loan would be forgiven if used for the previously-defined Permitted Loan Purpose, and despite the fact that PNC had indicated that any payments made to US Cargo's independent contractor truck drivers would qualify as the previously-defined Permitted Loan Purpose, PNC funded the loan with actual knowledge (or, at a minimum, PNC reasonably should have known) that the vast majority of US Cargo's loan would ultimately not be forgiven.

54.     At no time, from the time PNC funded US Cargo's PPP Loan until the time US Cargo requested forgiveness for the entire loan, did PNC apprise US Cargo that payments it might make to independent contractors would not be eligible for forgiveness.

55.     US Cargo's reasonable understanding, based on PNC's pre-loan representations, was that the entire loan amount would be forgiven since US Cargo used all the loan proceeds for "Permitted Loan Purposes."

56.     At the time it accepted US Cargo's Loan Application, and funded US Cargo's Loan the following day, PNC knew (or, alternatively, reasonably should have known) that US Cargo's reasonable expectation was that its entire loan amount would ultimately be forgiven.

57.     At the time it accepted US Cargo's Loan Application, and funded US Cargo's Loan the following day, PNC knew (or, alternatively, reasonably should have known) that the vast majority of US Cargo's Loan amount would ultimately not be forgiven.

58.     Between April 15, 2020 and July 28, 2021, US Cargo used the Loan Proceeds to cover what PNC represented to US Cargo in its Loan Documents to be forgivable payroll costs – payments to independent contractors, as reported by US Cargo (and submitted to PNC at its request as part of the loan application process) on Form 1099-MISC.

59.     PNC required US Cargo to submit its forgiveness application in a PNC portal, as opposed to the existing SBA portal.

60.     On July 28, 2021, after US Cargo applied for forgiveness of the entire loan, PNC, by way of its "SBA Forgiveness Client Portal," advised US Cargo that only $53,017 of the $1,524,000 loan would be "eligible for forgiveness," and demanded that US Cargo repay the balance of $1,470,983.  (Exhibit G, "Forgiveness Notice")

61.     Specifically, PNC advised US Cargo that:

We have reviewed all underlined supporting documents for your original PPP loan application.…  Based on the documents supporting your loan amount calculation, we believe $53,017.00 of your PPP loan is eligible for forgiveness.  This amount was calculated using the documented expenses and tax information you provided.

(*Id.*, Emphasis added).

62.     The "supporting documents for US Cargo's original PPP loan application" were the 1099-MISC forms requested by PNC to verify payments to independent contractors, which PNC led US Cargo to believe would be forgiven.

63.     Prior to July 28, 2021, PNC never apprised US Cargo of the SBA's position on the eligibility for forgiveness with respect to Loan proceeds used to pay independent contractors.

64.     PNC had all the information it needed prior to and as of the time it funded US Cargo's loan (on April 15, 2020) to know that virtually none of the Loan would be eligible for forgiveness.  Nonetheless, PNC hid that information from US Cargo, provided documents to US Cargo that indicated US Cargo's PPP Loan would be fully forgiven, and funded the loan anyway.

65.     US Cargo would not have taken the Loan had it believed that payments made to independent contractor truck drivers out of Loan proceeds were not eligible for forgiveness.  Alternatively, US Cargo would not have expended the proceeds of the loan that PNC represented would be forgivable on 1099 independent contractors had PNC advised US Cargo of the SBA changes at the time of or following the application for and distribution of loan proceeds.

66.     US Cargo complied with SBA and PNC requirements in every other material way, such that nothing US Cargo did or failed to do would have otherwise jeopardized the forgivability of its payments to independent contractors during the Loan Period.

## COUNT I
## BREACH OF CONTRACT

67.     Plaintiff restates and incorporates by reference Paragraphs 1 through 66 hereof, as though fully set forth herein.

68.     The PPP Term Note (inclusive of the PNC Info Sheet, Checklist, Application, and Certification, all of which were created by PNC and provided to US Cargo for consideration and/or execution prior to execution of the Term Note), constitutes a valid and enforceable contract between Plaintiff and PNC.  *See* Ex. F.

69.     Plaintiff performed all of its obligations under the PNC Term Note.

70.     PNC materially breached the PNC Term Note by, *inter alia*:

   a.     Misrepresenting the applicability of the PNC Loan qualifications to US Cargo;

b.   Misrepresenting the forgiveness qualifications of the PNC Loan to US Cargo;

c.   Failing or refusing to disclose the change in forgiveness status of the PNC Loan to US Cargo after requiring US Cargo to execute its Paycheck Protection Certification, and representing that PNC would "confirm the eligible PPP Loan amount using the Borrower's tax information that it has submitted...";

d.   Using the US Cargo PPP Loan for the benefit of PNC; and

e.   Failing and refusing to forgive the PNC Loan as represented.

71.   Further, at the time US Cargo's president, Alex Gjurcinov, signed PNC's loan agreement, given the nature and history of the PNC-US Cargo relationship, the nature of the communications between PNC and US Cargo in which PNC solicited US Cargo's interest in taking the loan, and the content of documents PNC provided to US Cargo prior to funding the loan that explained the extent to which any such loan would ultimately be forgiven, he and US Cargo reasonably expected that:

a.   PNC would act in US Cargo's best interests in administering the loan;

b.   PNC knew that US Cargo reasonably expected that by taking the PPP loan through PNC, the loan amount would be forgiven so long as US Cargo used the loan funds for permitted purposes under the terms of the PPP;

c.   PNC was fully aware, both at the time it solicited and when it funded US Cargo's loan, that US Cargo intended to use the loan funds to retain and pay truck drivers, the lifeblood of US Cargo's business, during the pandemic;

d.   PNC was fully aware that the truck drivers US Cargo planned to pay with PNC's loan proceeds were all independent contractors;

e.   PNC was fully aware of the language contained in documents PNC provided to US Cargo before the loan was funded indicating that a "permitted purpose" of the loan would be the payment of wages to truck drivers who were paid as independent contractors and who received 1099 tax forms from US Cargo;

f.   PNC, as the bank funding the loan through an SBA program, would know which "payroll costs" would be considered eligible for forgiveness and which would not, and that PNC would have this knowledge at all relevant times, including:

12

- at the time PNC solicited the loan;
- during the loan application and approval process; and
- at the time PNC funded the loan;

g.  Any otherwise PPP-compliant loan amounts US Cargo paid to independent contractors would ultimately be forgiven, when PNC's loan application, Certifications and Term Note - all of which PNC required US Cargo to execute – **all** indicated that such amounts would, in fact, be forgiven;

h.  By asking US Cargo to submit its 1099 forms as proof of payments in 2019 to its independent contractor truck drivers and part of the loan application process, PNC was confirming that PPP loan amounts used to continue making such payments would ultimately be forgiven;

i.  That the documents PNC provided to US Cargo, which US Cargo signed, containing the terms of the loan reflected PNC's (and the SBA's) then-current position with respect to whether and to what extent PPP loans would ultimately be forgiven;

j.  If, at any time prior to PNC's funding of US Cargo's PPP loan, the SBA had communicated its position that small businesses' payments to independent contractors would not qualify as "forgivable," PNC would have known about and communicated that position to US Cargo prior to funding the loan, and advised US Cargo that any loan amounts it intended to use to pay independent contractors would <u>not</u> be forgiven later;

k.  If, at any time prior to PNC funding US Cargo's PPP loan, the SBA communicated its position that small businesses' payments to independent contractors would not qualify as "forgivable," PNC would not then continue to provide US Cargo with both informational documents and legal documents for US Cargo's signature that failed to reflect the SBA's position; and

l.  If, at any time prior to PNC funding US Cargo's PPP loan, the SBA communicated its position that small businesses' payments to independent contractors would not qualify as "forgivable," PNC would not fund the loan without ensuring that US Cargo was aware of the SBA's position.

72.  PNC's retention of the benefit of use of the proceeds from the PNC Loan without forgiveness of the loan for US Cargo or compensation to Plaintiff does not comport with the reasonable expectations of the Parties at the time they entered into the Loan Agreement.

73.  PNC's conduct as outlined above is in breach of the duty of good faith and fair dealing implied in every contract.

74. The contract created by PNC and presented to and executed by US Cargo vested PNC with discretion in performing an obligation under the contract.

75. PNC exercised its discretion in bad faith, arbitrarily, capriciously, unreasonably and in a manner inconsistent with the reasonable expectations of the Parties.

76. PNC's conduct as outlined above was egregious and willful.

77. Plaintiff suffered damages as direct and proximate result of PNC's material breaches of contract. In addition to PNC's demand for repayment, and accruing interest, US Cargo has been required to accrue debt against its business and record the debt as an outstanding payable debt to PNC.

WHEREFORE, the Plaintiff, US Cargo Direct, Inc. respectfully prays that the Court enter judgment in its favor and against the above-captioned Defendant by awarding to Plaintiff money damages in an amount equal to Plaintiff's actual damages, permanently enjoining PNC from seeking repayment from US Cargo of any part of the PPP loan issued by PNC by way of the Term Note referenced herein; and granting such other and further relief as the Court deems just and equitable.

## COUNT II
## UNJUST ENRICHMENT

78. Plaintiff restates and incorporates by reference paragraphs 1 through 77 hereof, as though fully set forth herein.

79. PNC benefited from the use of PPP Loan and underlying "informational" and application documents from PNC in order to induce US Cargo to enter into the PNC Loan for PNC's benefit.

80. Said benefit to PNC came at Plaintiff's detriment, and Plaintiff was not compensated for the benefit to PNC. Moreover, PNC prevented US Cargo from making a fully

informed decision in order to allow for declination of the use the of the PNC Loan proceeds in order to avoid the loss to US Cargo's detriment.

81.     PNC's retention of the benefit of use of the proceeds from the PNC Loan without forgiveness of the loan for US Cargo or compensation to Plaintiff violates the fundamental principles of justice, equity, and good conscience.

82.     PNC's retention of the benefit of use of the proceeds from the PNC Loan without forgiveness of the loan for US Cargo or compensation to Plaintiff does not comport with the reasonable expectations of the Parties at the time they entered into the Loan Agreement.  In addition to PNC's demand for repayment, and accruing interest, US Cargo has been required to accrue debt against its business and record the debt as an outstanding payable debt to PNC.

WHEREFORE, the Plaintiff, US Cargo Direct, Inc. respectfully prays that the Court enter judgment in its favor and against the above-captioned Defendant by awarding to Plaintiff money damages in an amount equal to Plaintiff's actual damages, permanently enjoining PNC from seeking repayment from US Cargo of any part of the PPP loan issued by PNC by way of the Term Note referenced herein; and granting such other and further relief as the Court deems just and equitable.

## COUNT III
## BREACH OF FIDUCIARY DUTY

83.     Plaintiff restates and incorporates by reference Paragraphs 1 through 82 hereof, as though fully set forth herein.

84.     PNC and US Cargo entered into a "special relationship" with respect to US Cargo's application for and receipt of PPP loan proceeds, wherein PNC  assumed a fiduciary duty to US Cargo.

85. PNC, which was in the business of soliciting PPP loans and ensuring its familiarity with the rules associated with their forgiveness and repayment, had a vastly superior understanding of said rules than US Cargo, a trucking and logistics company from whom PNC solicited the loan. When considering whether or not to take out a PPP loan, US Cargo relied heavily upon PNC's superior understanding of PPP loan forgiveness rules.

86. PNC manifested its superiority and influence over US Cargo by soliciting the Loan and providing US Cargo with "information" and "checklists" PNC created that clearly led to the conclusion that payments US Cargo might make out of Loan proceeds to pay its independent contractor truck drivers would be forgiven upon later application by US Cargo.

87. PNC further manifested its pre-contract influence over US Cargo by representing that PNC would "confirm the eligible PPP Loan amount using the Borrower's tax information that it has submitted..." = information PNC knew to be 1099 forms showing payments US Cargo made to independent contractors

88. US Cargo exerted its dominance over US Cargo after US Cargo placed its trust and confidence in its banking partner to lend it money that would ultimately be forgiven under the SBA rules existing at the time the loan was processed and funded.

89. Plaintiff suffered damages as a direct and proximate result of PNC's breach of its fiduciary duty to US Cargo. In addition to PNC's demand for repayment, and accruing interest, US Cargo has been required to accrue debt against its business and record the debt as an outstanding payable debt to PNC.

WHEREFORE, the Plaintiff, US Cargo Direct, Inc. respectfully prays that the Court enter judgment in its favor and against the above-captioned Defendant by awarding to Plaintiff money damages in an amount equal to Plaintiff's actual damages, permanently enjoining PNC from

seeking repayment from US Cargo of any part of the PPP loan issued by PNC by way of the Term Note referenced herein; and granting such other and further relief as the Court deems just and equitable.

**COUNT IV**
**NEGLIGENT MISREPRESENTATION**

90.     Plaintiff restates and incorporates by reference Paragraphs 1 through 89 hereof, as though fully set forth herein.

91.     PNC owed US Cargo a duty to not misrepresent the terms by which US Cargo would have been obligated to repay its PPP Loan (i.e., the circumstances under which US Cargo's loan would not be forgiven) during its solicitation of a PPP Loan from US Cargo.

92.     PNC breached that duty by either providing knowingly incorrect information or failing to apprise itself of the SBA's rules with respect to the circumstances under which US Cargo's loan would not be forgiven.

93.     PNC's breach proximately caused damages to US Cargo.

94.     As of April of 2020, PNC, a financial institution, was in the business of supplying information for the guidance of borrowers in their business transactions.  Specifically, here, PNC was in the business of providing information by way of "Information Sheets" and Checklists to guide would-be borrowers in their navigation of PPP loan repayment rules.  PNC provided this very information to help guide US Cargo to determine whether it made sense to enter into a loan agreement with PNC.

95.     In April of 2020, PNC supplied misinformation to US Cargo which led US Cargo to take a loan that it would not otherwise have taken.  Specifically, PNC misrepresented the fact US Cargo would have no repayment obligation with respect to loan proceeds used to pay independent contractors.  That representation was false.

96. PNC's negligent misrepresentation (regarding the circumstances under which US Cargo's loan would not be forgiven) was critical to US Cargo's decision to take PNC up on its loan offer.

97. The information PNC supplied indicating that payments to independent contractors qualified as forgivable "payroll" costs was far from ancillary or incidental to US Cargo's agreeing to the terms of the loan. In addition to PNC's demand for repayment, and accruing interest, US Cargo has been required to accrue debt against its business and record the debt as an outstanding payable debt to PNC.

WHEREFORE, the Plaintiff, US Cargo Direct, Inc. respectfully prays that the Court enter judgment in its favor and against the above-captioned Defendant by awarding to Plaintiff money damages in an amount equal to Plaintiff's actual damages, permanently enjoining PNC from seeking repayment from US Cargo of any part of the PPP loan issued by PNC by way of the Term Note referenced herein; and granting such other and further relief as the Court deems just and equitable.

## COUNT V
## PROMISSORY ESTOPPEL

98. Plaintiff restates and incorporates by reference Paragraphs 1 through 97 hereof, as though fully set forth herein.

99. By way of the Contract Documents, PNC made an unambiguous promise to US Cargo that any Loan proceeds used to pay US Cargo's independent contractors would ultimately be fully forgiven.

100. Specifically, by representing that PNC would be making the determination as to the forgiveness-eligible portion of US Cargo's loan after requiring US Cargo to provide PNC with 1099 forms, PNC unambiguously represented to US Cargo that loan amounts allocated to payment

of US Cargo's independent contractors would be forgiven, assuming compliance with the remainder of the SBA requirements.

101.    By actually making payments to independent contractors out of the PPP Loan proceeds, US Cargo relied on PNC's promise related to the forgivability of payments of loan proceeds made to independent contractors.  PNC would not have made such payments to independent contractors had it known that those amounts were not eligible for loan forgiveness.

102.    US Cargo's reliance on PNC's promise was expected and foreseeable to PNC.

103.    There would have been no reason for PNC to have allowed for the submission of 1099 MISC forms providing evidence of US Cargo's past payments to independent contractors as part of the PPP loan process if future payments made by US Cargo to independent contractors out of PPP loan proceeds were not expected to be forgivable.

104.    Finally, US Cargo relied upon PNC's promise to its detriment.  PNC now seeks to recover interest and fees associated with virtually full repayment of a loan in excess of $1,500,000 that US Cargo would not have had to pay had PNC lived up to its promise.  In addition to PNC's demand for repayment, and accruing interest, US Cargo has been required to accrue debt against its business and record the debt as an outstanding payable debt to PNC.

WHEREFORE, the Plaintiff, US Cargo Direct, Inc. respectfully prays that the Court enter judgment in its favor and against the above-captioned Defendant by awarding to Plaintiff money damages in an amount equal to Plaintiff's actual damages, permanently enjoining PNC from seeking repayment from US Cargo of any part of the PPP loan issued by PNC by way of the Term Note referenced herein; and granting such other and further relief as the Court deems just and equitable.

## JURY DEMAND

US CARGO DIRECT, INC. respectfully demands a trial by jury as to all issues raised by this Complaint.

Respectfully submitted,

US CARGO DIRECT, INC.

By:  */s/  Peter G. Skiko*
    One of its attorneys

Peter G. Skiko, Esq. (ARDC #6210089)
James S. Harkness, Esq. (ARDC #6237256)
Swanson, Martin & Bell, LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois  60611
(312) 321-9100
pskiko@smbtrials.com
jharkness@smbtrials.com